Mount *v.* Potts.

MOUNT *vs.* POTTS and others.

1. The rule in equity is well established, that where mortgaged premises are sold in separate parcels successively to different purchasers, with covenants against encumbrances, the parcels are liable to payment in the inverse order of their sale.

2. A release of any of the parcels of the mortgaged premises successively sold, from the mortgage, not only frees that parcel entirely from the lien, but also frees the parcel sold before it, or so much of that parcel as the parcel released would have satisfied if not released.   And the mortgagee cannot, by a release, or any act of his, change the right of the purchaser of any of the parcels to have every parcel subsequently sold or its value first appropriated to the payment.

3. Where, after a sale of the mortgaged premises in successive parcels, the purchaser of the parcel first sold gives another mortgage on that parcel, such second mortgage cannot be decreed, at the instance of the owners of the third and fourth parcels, in a suit to foreclose the first mortgage covering the whole tract, to be paid by the mortgagee holding such second mortgage, on the ground of its being a personal obligation.

4. No positive relief, in adjusting equities between defendants, can be decreed or granted to one defendant against another, except such as can be granted incidentally to the relief sought by the complainant.

Argued on final hearing, upon bill, answers, and proofs.

*Mr. J. Wilson,* for defendant Warwick.

*Mr. A. V. Schenck,* for defendants Potts and Murphy.

THE CHANCELLOR.

The suit is for foreclosure and sale of mortgaged lands. The mortgage of the complainant, or his right to a decree, is not disputed. The controversy is between the defendants. The mortgage was given by Elias Dye to the complainant. After giving it, he sold the premises in four separate parcels, successively, to different purchasers, giving to each a deed with full covenants against encumbrances. None of the purchasers assumed or knew of this mortgage. The rule in equity is well established in such cases; it is that the parcels are liable to payment in the inverse order of their sale. No parcel is bound to contribute if those sold after it are sufficient to pay the mortgage.

In this case Mount (the complainant,) released the parcel sold secondly in order of time from the mortgage. This not only frees that parcel entirely from the lien, but also frees the first parcel, or so much of it as the second parcel, if not released, would have satisfied. The mortgagee, by a release or any act of his, cannot change the right of the purchaser of any parcel to have every parcel subsequently sold, or its value, first appropriated to the payment. These positions are not controverted here.

The dispute grows out of a claim of the owners of the third and fourth parcels to have the mortgage paid and satisfied by the defendant, William Warwick, who holds a mortgage for $4600 on the first parcel, given to him by the defendant, William Stultz, who now owns that parcel. The claim is not made against Stultz, or as a lien on that parcel of the land, but as a personal obligation of Warwick. As this suit is only for the foreclosure of the complainant's mortgage, and as no positive relief can be decreed or granted to one defendant against another, except such as can be granted incidentally to the relief sought by the complainant in adjusting the equities between the defendants, it may be difficult, if not impossible, to give in this suit the relief sought against Warwick. A decree that he pay the mortgage of the complainant would not be warranted by the facts stated in the bill. The

complainant, as against the lands, is only entitled to a decree that they may be sold in the order above indicated until enough is raised to pay his mortgage. Unless the three parcels last sold will not satisfy his mortgage, he cannot resort to the parcel of Stultz. Nor could it be sold to pay Warwick's mortgage, except upon Warwick's application. If the first parcel was sold to pay Mount's mortgage, and the surplus was in court, Potts and Murphy might, perhaps, have their equities considered.

But if we put out of consideration these difficulties, the evidence is not sufficient to support the claim of Potts and Murphy against Warwick.

They allege that a mortgage for $1500, given by John G. Mount to Dye, on the purchase of the first parcel, was assigned by Dye to Warwick for the purpose of paying off the mortgage of the complainant. This is said to have been done in the spring of 1869. The mortgage of Stultz to Warwick was given in December of that year, and the amount of this $1500 mortgage is included in it. Warwick surrendered it to be canceled at that time.

Warwick does not deny that Dye assigned to him this $1500 mortgage, but alleges that it was not given to him for the purpose of enabling him to pay off the mortgage of the complainant, but for $1550 advanced by him to Dye at the assignment, which, he states, was in the beginning of April, 1868. The advance he alleges was made by two checks, for $500 each, and by paying a note of Dye at a bank in Trenton, for $550. He produces two $500 checks of that date, endorsed by Dye, and a memorandum check for $550 to Dye or bearer, by which he alleges the note was taken up. And he testifies that these were the true consideration of the transfer of this mortgage to him, and that it was not transferred in consideration of his paying the complainant's mortgage, and that he never undertook to pay it.

Dye, on the other hand, testifies that it was transferred for that purpose, and that Warwick undertook to pay the complainant. He testifies that the checks produced were included in a mortgage for $10,000, on the 1st of April, 1869.

A schedule of the notes for which that mortgage was given is in evidence, and shows that these checks were not included, and that Dye is mistaken as to that point. The mortgage for $1500 was not, with the interest, sufficient to discharge the mortgage to the complainant and interest, and was not an adequate inducement for Warwick to enter into that undertaking.

Dye was on the eve of bankruptcy, and Warwick took a mortgage for $10,000 to secure what Dye then owed him, and it was not probable that he would, without security, have undertaken to pay a debt for which he was in no way liable. He had signed, as surety for Dye, a bond to Mrs. Walton, a former owner of the Stultz lot, conditioned that Dye should pay complainant's mortgage, for which he afterwards substituted his own bond with collateral security, with condition to save Mrs. Walton harmless; but he understood at that time that he or the first parcel were in no danger, as the three parcels last sold were abundant.

The only positive testimony on the point in dispute is the evidence of Dye and Warwick. They contradict each other. The testimony of Warwick seems supported by the production of the three checks which he says constituted the consideration of the assignment; that of Dye is weakened by the mistake in testifying that these checks were included in the $10,000 mortgage, and by his not being able otherwise to account for them.

The defendants, who seek to charge Warwick with the payment of this mortgage, have the burden of proof. He is not bound to pay it, unless he undertook to do it, and received a consideration. And were the testimony evenly balanced, I would not be warranted in putting this burden upon Warwick, especially as the alleged promise is an undertaking to pay the debt of another, and is within the spirit, if not the letter, of the statute of frauds.

The decree must be only for the relief of the complainant, by the sale of the premises in the order mentioned; and no other relief for the defendants, as against each other, can be had in this suit.